UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOVERNMENT APP SOLUTIONS, INC., <br><br>Plaintiff, <br><br>v. <br><br>UNITED STATES OF AMERICA, <br><br>Defendant. | No. 2:22-cv-01627-DAD-AC <br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT <br><br>(Doc. No. 15) |

This matter is before the court on the motion to dismiss filed by defendant United States of America ("the government" or "defendant") on June 20, 2023. (Doc. No. 15.) On July 24, 2023, the pending motion was taken under submission on the papers. (Doc. No. 16.) For the reasons explained below, defendant's motion to dismiss plaintiff's complaint will be granted, with leave to amend also being granted to plaintiff.

/////
/////
/////
/////
/////
/////

1

**BACKGROUND**

On September 15, 2022, plaintiff Government App Solutions, Inc. filed its complaint initiating this suit against defendant United States, alleging claims of negligence, fraud, and theft. (Doc. No. 1.) In its complaint, plaintiff alleges the following.[1]

Plaintiff is a corporation that provides software to municipalities that helps, among other things, increase road safety, reduce distracted driving incidents, and collect fines imposed by parking citations. (*Id.* at ¶ 16.) In or about January 2018, plaintiff contracted with an individual named Derek Bluford to work as a salesman; specifically, Bluford would communicate with municipalities and set up contracts for the towns to use plaintiff's services. (*Id.* at ¶ 17.) Bluford would then be compensated by plaintiff according to the size of the contract he set up. (*Id.*) On January 11, 2018, Bluford was indicted on federal wire fraud charges. (*Id.* at ¶ 19.)

Six months later, on or about July 1, 2018, Bluford entered into an agreement with an individual (referred to hereinafter in this order as "the Co-Marketer") to market plaintiff's services to the cities of Los Angeles, Phoenix, and New Haven. (*Id.* at ¶ 18.) The Co-Marketer would receive a share of the net revenue generated from each contract he helped plaintiff obtain with these cities. (*Id.*) According to plaintiff, the Co-Marketer intended to bribe the mayors of those cities in order to obtain contracts with them. (*Id.*)

In or about October 2018, Bluford agreed to act as a confidential informant for the Federal Bureau of Investigation ("FBI") in a public corruption investigation of which plaintiff alleges the Co-Marketer was the target. (*Id.* at ¶ 20.) An FBI special agent (referred to hereinafter in this order as "the Agent") promised Bluford that his pending criminal charges would be dropped in exchange for his participation in the federal investigation. (*Id.* at ¶ 24.) According to plaintiff, the Agent's promise was made against Department of Justice ("DOJ") policy, as such promises may only be offered by the U.S Attorney's Office. (*Id.*) The Agent also "violated the FBI's and

---

[1] The court emphasizes that the factual background described herein is derived solely from plaintiff's complaint. For the purposes of ruling on the pending motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Of course, the court takes no opinion as to the veracity of plaintiff's allegations.

2

the Office of Inspector General's policy regarding the management of Confidential Human Sources ('CHS') by developing a personal relationship with" Bluford. (*Id.* at ¶ 5.) The Agent met Bluford in social settings, brought her child to meetings with Bluford, bought personal items of clothing for Bluford, and told him to "break the law . . . without the proper filling out of the 'Otherwise Illegal Activity' forms, which are required whenever a CHS is authorized to commit illegal acts." (*Id.*)

Bluford was instructed by the FBI to offer and deliver bribes to mayors and municipal employees in return for the municipality buying plaintiff's services. (*Id.* at ¶ 20.) The Co-Marketer would always arrange the meetings between Bluford and the city officials and would sometimes provide the money for the bribe. (*Id.* at ¶ 21.) Bluford then delivered cash bribes or arranged for online payments, all disguised as contributions to the city officials' re-election campaigns. (*Id.*)

On November 6, 2019, Bluford stated that he was quitting the investigation because his pending criminal charges had not been dismissed as promised by the Agent. (*Id.* at ¶ 24.) According to plaintiff, an Assistant U.S. Attorney then told Bluford "that he generally does not take on cases that are personal to him, but that this investigation in which CHS Bluford was serving as the CHS was a 'personal matter' to him . . . ." (*Id.* at ¶ 25.) Bluford then agreed to continue participating in the investigation. (*Id.* at ¶ 26.) A few weeks later, on December 30, 2019, Bluford obtained a contract with the city of New Haven by offering a bribe to its then-mayor. (*Id.* at ¶ 27.)

In November or December 2019, the Agent directed an individual (referred to hereinafter as "the Buyer") to pose as an employee of the state of California interested in plaintiff's software. (*Id.* at ¶ 34.) At the Agent's direction, the Buyer falsely represented to plaintiff that California was interested in buying plaintiff's software for its own use and that the Buyer was authorized to negotiate a price for the purchase or licensing of plaintiff's software. (*Id.* at ¶ 35.) The Buyer made these false representations so that the FBI could obtain a copy of plaintiff's software without paying for it. (*Id.*) At the Buyer's request, and relying on his false representations, plaintiff provided a copy of the software to the Buyer for "testing" and "authenticating." (*Id.* at

3

¶ 36.) The FBI intended to use the copy as an authentic "sample" of software it was marketing to targets of its other public corruption investigations. (*Id.* at ¶ 39.)

The government never informed plaintiff that, under this "sting operation," Government App Solutions, Inc. would be the company on behalf of whom the bribes would be offered, nor that Bluford was a confidential informant working with the government. (*Id.* at ¶ 20.) The government never obtained plaintiff's consent to be used as the bribe provider in the FBI's "sting operations." (*Id.*) Plaintiff did not learn of the Co-Marketer's scheme or Bluford's role as a confidential informant until October 2020, when Bluford published a book about it. (*Id.* at ¶¶ 18, 20.) After it became public knowledge that plaintiff was the company used in the FBI's investigation and on whose behalf the bribes were offered, no municipality would do business with plaintiff. (*Id.* at ¶ 24.) Before the bribery scheme became public knowledge, plaintiff was valued at $15 million; after the scheme was disclosed, plaintiff's value fell to zero. (*Id.* at ¶ 30.)

Based on the above allegations, plaintiff asserts the following three claims in its complaint against defendant United States brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"): (1) negligence; (2) fraud; and (3) theft.

On June 20, 2023, defendant filed the pending motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this court lacks jurisdiction over plaintiff's claims because they are barred by exceptions to the FTCA's waiver of sovereign immunity. (Doc. No. 15.) Plaintiff filed its opposition to the pending motion on August 2, 2023. (Doc. No. 20.) On August 14, 2023, the government filed its reply thereto. (Doc. No. 21.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) permits a party to "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted).

1  The court construes the government's argument to be that the allegations in plaintiff's complaint, even if assumed to be true, are insufficient to invoke federal jurisdiction over plaintiff's claims. (*See* Doc. No. 15.) The government therefore mounts a facial attack.

"The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

## ANALYSIS

"As a sovereign, the United States is immune from suit unless it waives such immunity." *Chadd v. United States*, 794 F.3d 1103, 1108 (9th Cir. 2015) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The waiver of sovereign immunity is a prerequisite to federal court jurisdiction. *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). The FTCA provides a broad waiver of the government's sovereign immunity for tort claims arising out of the negligent conduct of government employees acting within the scope of their employment. *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941). Pursuant to the FTCA, the United States can thus be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Chadd*, 494 F.3d at 1109.

The FTCA, however, provides various exceptions to its broad waiver of sovereign immunity. Relevant here, two exceptions relate to "[a]ny claim arising out of . . . [1] misrepresentation . . . or [2] interference with contract rights," for which the United States' sovereign immunity is not waived. 28 U.S.C. § 2680(h). The court will next address whether these exceptions to the FTCA's waiver of sovereign immunity bar each of plaintiff's claims brought against the United States in this action.

/////

**A.     Fraud Claim**

As noted, the FTCA bars "[a]ny claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). "Under this exception, claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred, including misrepresentations made willfully [or] . . . negligently." *Esquivel v. United States*, 21 F.4th 565, 577 (9th Cir. 2021) (internal citations and quotation marks omitted). In light of this binding precedent, defendant United States is correct in asserting that plaintiff's fraud claim against it is barred by § 2680(h). (Doc. No. 15-1 at 12).

Though not entirely clear to the court, plaintiff appears to argue in its opposition to defendant's motion to dismiss that the § 2680(h) misrepresentation exception is unconstitutional, both facially and as applied to plaintiff, because it purportedly violates the Fifth Amendment's Due Process Clause and Takings Clause. (Doc. No. 20 at 9–10.) The court is not persuaded by plaintiff's cursory and underdeveloped argument in this regard. "[A]n act of Congress comes . . . clothed with a presumption of constitutionality, and the burden is on the plaintiff to show that it violates due process." *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990 (9th Cir. 1987). Plaintiff neither cites any authority supporting its argument in this regard—and the court has found none—nor elaborates on its vague argument to any degree in its opposition brief.

Further, to the extent plaintiff also brings an as-applied challenge to § 2680(h)—which, again, is not clear from its opposition brief—the court concludes that the misrepresentation exception is not unconstitutional as applied to plaintiff. For numerous reasons, the court finds that plaintiff has failed to allege a deprivation of its Fifth Amendment rights. Most fundamentally, plaintiff does not clearly specify whether the government's alleged conduct purportedly violates the Takings Clause, the Due Process Clause, or both, let alone develop an argument on these points. Plaintiff provides no explanation as to why § 2680(h)'s misrepresentation exception as applied to it violates the Fifth Amendment in any way, and the court will not invent plaintiff's constitutional challenge for it.

Plaintiff's argument fails at the first step because it does not even identify any property interest protected by the Fifth Amendment. *See Peterson v. U.S. Dep't of Interior*, 899 F.2d 799, 807 (9th Cir. 1990) ("The first step in both due process and taking analyses is to determine

1  whether there is a property right that is protected by the Constitution."). In another section of its
2  opposition brief, plaintiff appears to argue that it had a protected property interest in its continued
3  value as a company before the government's investigation was disclosed. (*See* Doc. No. 20 at 5,
4  7–9.) Plaintiff is incorrect, however, because its value as a company was contingent and
5  uncertain. *See Bowers v. Whitman*, 671 F.3d 905, 913 (9th Cir. 2012) ("[I]f the property interest
6  is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then
7  the government's modification or removal of the interest will not constitute a constitutional
8  taking.") (citation omitted); *PVM Redwood Co., Inc. v. United States*, 686 F.2d 1327, 1329 (9th
9  Cir. 1982) (holding that "an expectancy based on past experience that contracts would be entered
10 into" was not a property interest for a taking claim); *see also Bd. of Regents of State Colls. v.
11 Roth*, 408 U.S. 564, 577 (1972) (holding that a property interest under the Due Process Clause
12 requires more than "a unilateral expectation" and that a person must instead "have a legitimate
13 claim of entitlement"). Moreover, plaintiff offers no argument as to whether the government
14 committed a physical taking or a regulatory taking, or whether any regulatory taking was a *per se*
15 taking or a taking pursuant to the Supreme Court's decision in *Penn Central Transportation Co.
16 v. City of New York*, 438 U.S. 104 (1978). Nor does plaintiff argue that any such taking was for a
17 public use. *Cf. Scott v. Jackson Cnty.*, 297 F. App'x 623, 625–26 (9th Cir. 2008)[2] ("[T]he
18 Takings Clause is implicated only when the taking in question is for a public use. Here, Scott
19 never alleged that her property was taken or retained for any reason other than for law
20 enforcement purposes."). Nor does plaintiff identify whether its vague due process argument is
21 substantive or procedural.
22      Accordingly, and for all of these reasons, defendant's motion to dismiss plaintiff's fraud
23 claim will be granted.
24 **B.    Claim of Theft by False Pretenses**
25      Defendant also moves to dismiss plaintiff's claim for theft by false pretenses as barred by
26 the misrepresentation exception. (Doc. No. 15-1 at 12.) Plaintiff opposes this aspect of the

---

[2] Citation to this unpublished Ninth Circuit decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

pending motion, arguing that "theft is not specifically mentioned as an exception" under the FTCA and thus its theft claim is not barred.[3]  (Doc. No. 20 at 9.)  In its reply brief, defendant argues that courts must "look beyond the label" of the claim and determine if the underlying government conduct constitutes misrepresentation.  (Doc. No. 21 at 3.)  Defendant contends that misrepresentation is the core of a claim for theft by false pretenses and that plaintiff's theft claim is therefore barred.  (*Id.*)

"In determining whether a claim 'arises out of' one of the enumerated torts, [courts] look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)."  *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996).  The critical question is "whether conduct that constitutes an enumerated tort is 'essential' to a plaintiff's claim."  *Id.*; *see also Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990) (holding that the plaintiff's negligence claim was barred by the misrepresentation exception because "the essential element of [the plaintiff's] claim is that [the government] gave it inaccurate information").

"To plausibly state a theft by false pretenses claim, plaintiffs must allege not only that [the defendant] made specific false representations to them, but also that plaintiffs transferred their property to [the defendant] 'in reliance on the representation.'"  *Doe v. Meta Platforms, Inc.*, __ F. Supp. 3d __, 2023 WL 5837443, at *15 (N.D. Cal. 2023) (quoting *People v. Miller*, 81 Cal. App. 4th 1427, 1440 (2000)).

Here, the court concludes that the misrepresentation exception applies and bars plaintiff's claim of theft by false pretenses because the allegations of plaintiff's complaint show that defendant's alleged misrepresentations are essential to this claim.  Specifically, plaintiff alleges that the government directed the Buyer to make several false representations, including that he was a buyer interested in purchasing plaintiff's software for the state government when he was actually seeking to obtain a copy of plaintiff's software for the government to use in its sting

---

[3] Plaintiff also argues that even if there were such a theft exception, it would violate the Fifth Amendment.  (Doc. No. 20 at 9–10.)  Again, plaintiff offers no further explanation or argument on this point, nor any citation to authority.  The court rejects plaintiff's cursory argument for similar reasons to those discussed above.

operation. (Doc. No. 1 at ¶¶ 34–39.) Further plaintiff alleges that it would not have provided a copy of its software to the government for this purpose. Given these allegations, the court readily concludes that "the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)" and that whether the government committed the tort of misrepresentation "is 'essential' to [] plaintiff's claim." *Sabow*, 93 F.3d at 1456; *see also Dernis v. United States*, No. 21-cv-03157, 2023 WL 4564591, at *11 (N.D. Ill. July 17, 2023) (holding that the plaintiffs' conversion claim was barred because it was "fundamentally grounded on deceit or misrepresentation" where the plaintiffs had alleged "that the United States has 'obtained from plaintiffs money, property, and other valuable things under false pretense and with the intent to defraud plaintiffs'").

Accordingly, the government's motion to dismiss plaintiff's theft claim will also be granted.

**C.    Negligence Claim**

As to relief in connection with its negligence claim, plaintiff seeks damages of: (1) $150,000.00, the amount "spent pursuant to plaintiff's contract with the City of New Haven" for which plaintiff "has not been reimbursed," and (2) $15 million, which was the alleged value of plaintiff as a company before the bribery scheme was publicly disclosed. (Doc. No. 1 at 13, 14, 18.) Defendant argues that plaintiff's negligence claim is barred because it is essentially a claim for interference with existing contract rights, as well as prospective interference with economic advantage, which "arises out of" interference with contract rights and is therefore also barred by the FTCA. (Doc. No. 15-1 at 10–11); *see also* 28 U.S.C. § 2680(h) (barring "[a]ny claim arising out of . . . interference with contract rights"). Plaintiff did not respond to this argument advanced by the government in its opposition.[4]

---

[4] Within the section of plaintiff's opposition brief entitled, "The Fifth Amendment Does Not Allow the Exceptions Based on Misrepresentation, Theft and Deceit as Posited by Defendant USA," plaintiff merely includes a single sentence arguing that "[a]llowing the misrepresentation, deceit, and/or breach of contract exceptions to deprive plaintiff's rights under the Fifth Amendment would be in violation of the Fifth Amendment and a miscarriage of justice." (Doc. No. 20 at 9.) For similar reasons to those discussed above, the court rejects plaintiff's conclusory argument that the contracts rights exception violates the Fifth Amendment.

To the extent plaintiff is seeking to recover the $150,000.00 value of its existing rights under its contract with the City of New Haven, a value which it allegedly lost due to the government's interference, plaintiff's negligence claim is plainly barred by §2680(h). *See Numrich v. U.S. Postal Serv.*, No. 01-cv-00532-ST, 2001 WL 34043386, at *3 (D. Or. Sept. 10, 2001) (dismissing the plaintiff's negligence claim as barred by the contract rights exception because "the alleged underlying conduct consist[ed] of actions taken by [the government] . . . which reduced the profit [the plaintiff] anticipated receiving as a result of his contract with" a third party); *Wells v. Fed. Aviation Admin.*, No. 22-cv-00187-JMK, 2023 WL 8446391, at *6 (D. Alaska Sept. 12, 2023) (dismissing the plaintiff's claim for negligent interference with economic advantage where the plaintiffs, who were commercial pilots, had alleged that the government's investigation of the plaintiffs' plane crash had "interfere[d] with plaintiff's existing employment contracts").

Next, because the contract rights exception bars claims for interference with prospective advantage, and because the remainder of plaintiff's negligence claim arises from such interference, the court concludes that plaintiff's negligence claim is fully barred. First, the FTCA does not waive sovereign immunity as to claims of interference with prospective economic advantage. *See Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985) ("To hold that interference with prospective advantage does not arise out of interference with contract rights under section 2680(h) would subject the government to liability if its employees interfered with the plaintiff's mere expectation of entering a contract, but not if they interfered with a contract already in existence. Such a result would be illogical and contrary to the 'words and reason of the exception.'") (quoting *Kosak v. United States*, 465 U.S. 848, 854 (1984)). Consequently, "[t]he majority of courts that have considered whether interference with prospective economic advantage may be pursued under the FTCA have concluded such a claim is barred by the contract rights exception." *Wells*, 2023 WL 8446391, at *5; *see also Numrich*, 2001 WL 3403386, at *7 (stating that courts have "universally" held that claims for interference with prospective economic advantage are barred by the contract rights exception).

/////

Second, the court finds that the contract rights exception bars the remainder of plaintiff's claim, no matter that plaintiff labels the claim as one for "negligence." "The FTCA bars claims for interference with prospective economic gain or advantage, 'no matter what words are used to describe such a tort.'" *Mangano v. United States*, No. 05-cv-02836-PJH, 2005 WL 8162006, at *9 (N.D. Cal. Oct. 28, 2005) (quoting *Numrich*, 2001 WL 34043386, at *6) (dismissing the plaintiff's "claim that the actions of the [government] tarnished his standing in the medical and research community and resulted in a loss of employment opportunities" because it was "essentially a claim of interference with prospective economic advantage). Because the basis of plaintiff's claim seeking $15 million in damages is that negligence by the government caused plaintiff to lose future income after being unable to secure any further contracts with municipalities, this claim is barred by the contract rights exception. *See Wells*, 2023 WL 8446391, at *6 (dismissing the plaintiffs' claim for negligent interference with economic advantage where the plaintiffs had alleged that "negligence by the FAA caused plaintiffs to be unable to secure the economic advantage of income from employment as pilots with any commercial airline or private aircraft operation") (internal quotation marks omitted); *see also id.* ("It would be illogical to interpret the exception as shielding the government from liability for interference with plaintiffs' existing employment contracts but not potential future employment contracts.").

Accordingly, the government's motion to dismiss plaintiff's negligence claim will be granted.

**D.    Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

11

pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Plaintiff requests leave to amend in its opposition brief (Doc. No. 20 at 11), but all of its claims are clearly barred by exceptions to the FTCA's waiver of sovereign immunity. However, given the policy of "extreme liberality" and the fact that this is plaintiff's original complaint, the court will nonetheless grant plaintiff leave to amend out of an abundance of caution. *Rosenberg Bros.*, 283 F.2d at 406. While the court may be highly skeptical that plaintiff will be able to do so, the court cannot determine with certainty that its complaint could not "possibly" be cured by the allegation of additional facts. *Cook*, 911 F.2d at 247. Importantly, plaintiff should only file an amended complaint if it has a good faith basis for additional allegations that would support a finding that § 2680(h)'s misrepresentation and contract rights exceptions do not apply here so as to bar plaintiff's claims.

## CONCLUSION

For the reasons explained above,

1. Defendant's motion to dismiss (Doc. No. 15) is granted;
2. Plaintiff is granted leave to amend its complaint to the extent that it has a good faith basis for doing so;
3. Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a first amended complaint, or a notice of its intent not to file a first amended complaint; and
4. Plaintiff is warned that its failure to timely file either a first amended complaint or a notice of its intent not to file a first amended complaint will result in dismissal of this action.

IT IS SO ORDERED.

Dated: **February 16, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

12